PAUL FARRELL and ROSE FARRELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farrell v. Commissioner
Docket No. 24223-81.
United States Tax Court
T.C. Memo 1983-542; 1983 Tax Ct. Memo LEXIS 246; 46 T.C.M. (CCH) 1290; T.C.M. (RIA) 83542; September 1, 1983. Edward R. Joyce, for the petitioners. Donald L. Wells, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1977 in the amount of $1,065. The sole issue presented for our decision is whether petitioners' farming operation was an "activity * * * not engaged in for profit" within the meaning of section 183(a) of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of *248 the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners, Paul Farrell and Rose Farrell, husband and wife, resided in St. Louis, Missouri at the time they filed their petition herein. They timely filed a joint Federal income tax return for the calendar year 1977 with the Internal Revenue Service. During 1977, petitioners were employed in St. Louis, Missouri at jobs unrelated to the operation of the farm in question. Petitioner Paul Farrell was employed as an automobile assembler for General Motors. Petitioner Rose Farrell was employed as a deputy clerk for the city of St. Louis and as a part-time employee of a catering company. Petitioners purchased a farm in St. Genevieve County, Missouri in 1969 for $3,900. They subsequently sought an estimate of the cost of bridging a stream that fronted the farm and, upon determining the cost was prohibitive, decided to sell the farm. Petitioners sold this farm in 1974 for $9,000 without having farmed the property. In October 1973, petitioners purchased their present farm in Jefferson County, Missouri for $29,000. This *249 farm is located approximately 54 miles from petitioners' St. Louis residence. The farm consists of 9.12 acres and was improved by a modest farmhouse and a dilapidated barn which petitioners later determined was not worth repairing.At the time of purchase, the property was overgrown with brush and was generally in a poor state of repair. In 1974, petitioners began clearing and farming their farm. At present, the farm is approximately one-half tillable, although at one time prior to petitioners' ownership the farm was three-fourths tillable. Since 1974, petitioners have continued to improve their farm by installing fencing and erecting a pole barn and a chicken coop. They have also improved the farmhouse by installing a septic field and a new well and pump.By the end of 1977, petitioners owned farm machinery and structures associated with the farm having an aggregate cost basis of $24,539, including the cost of the farmhouse and out-buildings, but excluding the value of the land. [2]
*250 Petitioners' principal farming endeavors have consisted of growing fruits and vegetables and raising chickens. They also purchased a few calves in 1974, but they sold their cattle in 1976 and 1977 after determining they could not raise cattle profitably.Petitioners also derived a portion of their farm income from the rental of the farmhouse. At the time petitioners purchased the farm, the farmhouse was rented for $50 per month.By 1977, the rent had increased to $70 per month. This rental charge, however, does not reflect a fair market value rent, inasmuch as petitioners gave their tenants a discount on the rent in return for help on the farm. The tenants assisted with weeding the garden, feeding the chickens, collecting vegetables and eggs, and generally protecting the farm from vandalism. At least during 1977, petitioners' full-time employment in St. Louis prevented them from spending much time working on the farm during the week. They spent most weekends at the farm, however, as well as some periods during the week when petitioners took time off from their full-time employment. While at the farm, petitioners performed general tasks such as caring for the produce and chickens. *251 They also provided the labor for many farm improvements such as clearing the land and installing fences. While at the farm, petitioners stayed in a small camper trailer which they would bring with them from St. Louis. Petitioners' farm does not contain recreational facilities such as a swimming pool or tennis courts. Petitioners reported the following income and expenses from their farming operation on their tax returns for taxable years 1973 through 1977: PAUL FARRELL and ROSE FARRELL -- Farm Income and Expenses 1973-1977, Inclusive
INCOME:
1973
1974
1975
Rent
$150.00 $ 600.00 $ 610.00 Cattle
Eggs
Produce
30.00 327.00 Gross Farm Income
$150.00 $ 630.00 $ 937.00 FARM EXPENSES: Repairs
$ 90.99 $1,012.53 $ 404.41 Cost of Livestock
121.98 Taxes
27.62 96.12 130.97 Insurance
66.75 66.75 66.75 Fire tags
7.50 7.50 10.00 Light
7.30 54.00 Interest
1,023.24 1,151.22 Gasoline
105.75 66.75 Feed
267.82 Seed
34.00 Fertilizer
18.00 Supplies
Freight
Labor
Utilities
Pond Clearing
Total cash expenses
$200.16 $2,487.87 $2,149.92 Depreciation
200.16 1,207.92 1,454.17 TOTAL DEDUCTIONS
* $400.34 $3,695.79 $3,604.09 NET FARM PROFIT OR LOSS
$ (250.34)
* $ (3,065.79)
$ (2,667.09)
*252 INCOME:
1976
1977
Rent
$ 840.00 $ 840.00 Cattle
439.00 675.00 Eggs
417.00 563.00 Produce
279.00 312.00 Gross Farm Income
$1,975.00 $2,390.00 FARM EXPENSES: Repairs
$ 519.00 $ 642.00 Cost of Livestock
Taxes
103.00 118.00 Insurance
67.00 94.00 Fire tags
10.00 Light
Interest
1,050.00 1,015.00 Gasoline
Feed
771.00 1,008.00 Seed
48.00 Fertilizer
20.00 140.00 Supplies
69.00 Freight
31.00 Labor
576.00 Utilities
50.00 Pond Clearing
748.00 Total cash expenses
$2,640.00 $4,439.00 Depreciation
1,911.00 2,291.00 TOTAL DEDUCTIONS
$4,551.00 $6,730.00 NET FARM PROFIT OR LOSS
$ (2,576.00)
$ (4,340.00)
Petitioners *253 have had no experience with commercial farming prior to purchasing their farm in Jefferson County. Furthermore, they have not taken any formal course of instruction in farming. They do have experience, however, in raising produce on a noncommercial basis and have purchased and studied several books on various aspects of farming. They also have consulted the local Cooperative Extension Center and have had the soil of their farm analyzed there. One of the areas in which petitioners' lack of experience with commercial farming was most manifest was in the area of record keeping. During 1977, the year in issue, petitioners failed to maintain formal accounting records. They did, however, record sales of produce on a tablet and retained bills of sale and cancelled checks as evidence of expenditures. Petitioners' tax return preparer used these records in preparing petitioners' tax return. During 1977, petitioners reported gross income of $31,675, gross rental income of $600, and gross farming income of $2,390. They reported net taxable income of $26,808. For taxable years 1973 through 1977, petitioners reported net taxable income as follows: Year
Taxable Income
1973
$11,249
1974
9,866
1975
2,472
1976
10,129
*254 OPINION During the year in issue, 1977, petitioners sustained a net loss from the operation of a small farm in Jefferson County, Missouri. The sole issue before us is whether petitioners' operation of the farm was an "activity * * * not engaged in for profit" within the meaning of section 183. If so, petitioners are limited as to the losses which may be taken with respect to the activity in accordance with section 183. Respondent contends that petitioners' farm operation was not primarily motivated by a desire for profit. Respondent points to the unbusiness-like manner in which the farming operation was conducted and the history of losses incurred by petitioners beginning in taxable year 1973. Petitioners argue they operated the farm with the objective of making a profit, albeit a modest one. Petitioners point to their investment in farm machinery and structures, the difficult nature of the farm work rendered, and the absence of recreational facilities on the farm. After a careful review of the entire record, we are satisfied that petitioners intended to derive a profit from their farming activity. *255 Section 183(a)[3] provides that no deduction shall be allowed to an individual for expenses attributable to an activity not engaged in for profit except as provided in section 183(b). Section 183(b) essentially states that losses in excess of income are disallowed with respect to such an activity. Section 183(c) defines the phrase "activity not engaged in for profit" to mean any activity other than one with respect to which deductions are allowable under section 162[4] or under paragraphs (1) or (2) of section 212. [5] Thus, only if deductions would be allowable under sections 162 or 212(1) or (2) with respect to the activity, is that activity engaged in for profit. *256 A common prerequisite of deductibility under section 162 and paragraphs (1) and (2) of section 212 is a predominant purpose and intention of making a profit from the activity with respect to which the expenses are incurred. Allen v. Commissioner,72 T.C. 28, 33 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. on another issue, 615 F.2d 578 (2d Cir. 1980).The taxpayer's expectation of profit need not be a reasonable one, but the facts and circumstances must indicate that he had an actual and honest objective of making a profit. Section 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner,78 T.C. 642, 645-46 (1982), affd. in an unpublished opinion (D.C. Cir. Feb. 22, 1983). Therefore, in essence, section 183 distinguishes between nondeductible hobby losses and deductible business losses. S. Rept. No. 91-552 (1969), 1969-3 C.B. 423, 489. Accordingly, in this case we must determine whether petitioners had an actual and honest profit objective in conducting their farming *257 operation. Petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.While ultimately we are deciding subjective intent, that intent can be ascertained from objective factors which are entitled to greater weight than a taxpayer's statement. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979)Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. per order (9th Cir. 1981).
Section 1.183-2(b), Income Tax Regs., sets forth some of the relevant factors, derived principally from prior case law, which are to be considered in determining whether an activity is engaged in for profit. They are: (1) the manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisors, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the *258 expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) elements of personal pleasure or recreation. These factors are not exclusive and are to be applied according to the unique facts of each case. Accordingly, no one factor, or a majority of nine factors, need be considered determinative. Golanty v. Commissioner,supra, at 426-27; Benz v. Commissioner,63 T.C. 375, 382-83 (1974). In holding for petitioners, we are particularly persuaded by several factors. We are impressed with the difficult nature of work rendered by petitioners and the lack of recreational facilities on the farm. Petitioners were directly involved in all phases of manual labor on the farm such as repairing fences, clearing the land, and weeding the crops. While at the farm, they stayed in a small camper trailer. Petitioners' farm did not contain recreational or entertainment facilities *259 such as a swimming pool or a guest house. Even if we conclude that petitioners derived pleasure from working on their farm, this fact alone should not negate an intent to operate the farm for profit. Smith v. Commissioner,9 T.C. 1150, 1155 (1947). The argument that a taxpayer's activity constitutes a hobby rather than a business simply because the taxpayer enjoyed the activities has met with little success in previous decisions of this Court. In Jackson v. Commissioner,59 T.C. 312, 317 (1972), for example, we stated that "suffering has never been made a prerequisite to deductibility." We are also persuaded in holding for petitioners by the fact that petitioners made substantial investments in farm equipment and structures. From 1973 through 1977, petitioners purchased numerous farm implements, including a used tractor, and erected a pole barn and a chicken coop. Throughout this period, petitioners' taxable income was rather modest ranging from a low of $2,472 in 1975 to a high of $26,808 in 1977. [6] Given petitioners' modest financial condition, *260 we do not think petitioners would have made these substantial farm expenditures and engaged in the physical work required on the farm without an intent to make a profit. Respondent nevertheless contends that petitioners' history of losses beginning in 1973 indicates the absence of a profit motive. Although the history of losses is a very relevant factor, we do not think it necessarily indicates the absence of a profit motive in the case before us. It is not uncommon for a business to incur steady losses during its formative years. A series of losses during the initial or star-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. Section 1.183-2(b)(6), Income Tax Regs. Petitioners bought the property in late 1973. The year in issue, 1977, was the fourth year after acquisition *261 and all of those years resulted in losses from the operation of the farm. Given the repair and development work required on the farm and the modest level of the losses incurred by petitioners, we do not believe the succession of losses through taxable year 1977 proves petitioners lacked the requisite profit motive. [7]
Respondent also points to petitioners' failure to maintain formal accounting records of farm operations and petitioners' general lack of farming experience as an indication that petitioners' lacked the necessary profit motive. Section 1.183-2(b)(1) and (2), Income Tax Regs. Although petitioners did not maintain a double-entry set of accounting records, they did retain records of income and expenses necessary for the preparation of their *262 tax returns. We do not believe formal accounting records are an absolute requirement to the success of an operation the size of petitioners' farm. We are also not persuaded that petitioners' lack of farming experience indicates the absence of a profit motive. Perhaps if petitioners had been more sophisticated in their knowledge of farming, they may have had a more realistic view of their ability to operate their farm at a profit in the early years of operation. The focus of our inquiry, however, is not the reasonableness of petitioners' profit expectation, but rather, whether petitioners had an actual and honest profit objective. Dreicer v. Commissioner,78 T.C. 642, 645-46 (1982), affd. in an unpublished opinion (D.C. Cir. Feb. 22, 1983).Although losses cannot go on indefinitely without requiring a reassessment of petitioners actual and honest objectives, we believe petitioners held such a profit objective, at least through taxable year 1977. Based upon the record as a whole and after considering all the facts and circumstances, we hold that petitioners engaged *263 in their farming activities in taxable year 1977 with an actual and honest profit objective. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. Among the farm assets purchased by petitioners are: (1) a used tractor purchased in 1973 for $950, (2) a building constructed in 1975 for $1,070 (presumably the chicken coop), (3) a new well and pump in 1976 for $2,900, (4) a barn constructed in 1977 for $3,800, and (5) miscellaneous farm equipment such as a plow, cultivator, and digger.↩
*. The stipulation of facts submitted by the parties from which the numbers in the above table are taken, appears to contain two mathematical errors. Total farm expenses for 1973 are stipulated as $748.76 while the stipulated farm expenses for that year total only $400.34.Also, total farm expenses for 1974 are stipulated as $3,695.74 while the stipulated farm expenses for that year total $3,695.79.↩
3. Sec. 183(a) through (c) provides as follows: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule. -- In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) Deductions Allowable. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) Activity Not Engaged in for Profit Defined. -- For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212↩. 4. Sec. 162(a) provides in pertinent part: (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. ↩
5. Sec. 212(1) and (2) provides: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income * * *.↩
6. The parties did not submit into the record gross income figures for taxable years 1973 through 1976. In 1977, petitioners reported gross wage income of $31,675, gross rental income of $600, and gross farming income of $2,390.↩
7. The period of time over which petitioners' losses arose was not unduly long on the particular facts and circumstances before us. Cf. Engdahl v. Commissioner,72 T.C. 659, 663 (1979) (10 straight years of losses in a horse-breeding operation); Allen v. Commissioner,72 T.C. 28, 30 (1979) (8 straight years of losses in renting a ski lodge). Cf., sec. 1.183-2(c)↩, example 4, Income Tax Regs.